TRAUGOTT WIRSCHING, respondent,

*v.*

GRAND LODGE OF FREE AND ACCEPTED MASONS OF NEW JERSEY, appellant.

[Argued June 24th and 27th, 1904. Decided April 8th, 1905.]

1. A deed may be corrected on the ground of mistake where the mistake is mutual. If unilateral, the remedy is rescission.

2. Complainant, seventy-one years of age, physically infirm, a German unable to read or write English, applied for admission to defendant's Masonic home. One of the rules of the lodge was that an applicant should, before admission, execute to it a deed of all his property. Complainant, at the time of his application, had a vested interest in a legacy of $3,000, payable at the death of his brother's widow. At the time he executed the deed (which was in English) he was informed by an attorney that his interest in the legacy did not constitute property, and would not pass. He had, before executing it, stated in his application that he was without property, real or personal, and he was received into the home on this understanding, the lodge being then in ignorance of the existence of the legacy. He remained nine months and then, the widow dying and the legacy becoming payable, and the lodge insisting that the legacy belonged to it, he left the home and sued to rescind, offering to pay a reasonable sum for his board and lodging.—*Held*, that he was entitled to relief.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens, who filed the following conclusions:

The proofs in this case appear to present a case of mistake. The facts are, briefly, these: The complainant was for fifteen years in the employ of the Singer Sewing Machine Company, as a laborer. He is seventy-one years of age, and owing to a physical infirmity became incapacitated for work. Some of his friends suggested that he apply for admission to the home of the grand lodge, in Burlington. He had been a member of the Herman lodge, a subordinate society, for thirty years. Accordingly, he made application for admission. The papers were filled out

by one Jansen, a member, but not an officer, of the grand lodge. Whether he was the agent of the grand lodge, or whether he merely acted as Wirsching's agent, does not very clearly appear. The application, dated March 18th, 1902, is in the printed form commonly used by the lodge. One of the questions was as follows: "What property have you, real or personal?" and the written answer, in Jansen's handwriting, was "None." This answer was, in point of fact, incorrect, for the complainant had at that time a vested interest in a legacy of $3,000, payable at the death of his brother's widow. He was a German of not much intelligence, unable to read or write English. He may have thought that because he had no right to the present possession of this legacy, and because he might never come into possession of it, if the widow should survive him, the answer was correct. With this application there appears to have been sent a paper, entitled "Regulations for the Masonic Home," one of which required the applicant, before his admission, to execute a deed of conveyance to the grand lodge of all his property, real and personal, then owned or that might thereafter come into his ownership or possession, or to which he might become entitled. Although in his application complainant said, in answer to one of the printed questions, that he had read these rules, there is no evidence, outside of the answer itself (which is in Jansen's handwriting), that he had done so. He could not have read them himself, for he could not read English, and there is no affirmative evidence that they were translated to him. The application, as filled out and as signed in German character by the complainant, was sent to the secretary of the grand lodge, who sent back a form of deed containing the usual vacant space for the description of the property to be conveyed. It was worded in conformity with the above-mentioned regulation. As it was necessary to acknowledge this latter paper, Jansen took complainant to the office of Louis Graff, an attorney, in Elizabeth. They were neither of them his clients, and Graff had no connection with the lodge. Their recollection of what took place at his office is vague, and if the case depended on their testimony alone it would fail. Its vagueness is largely attributable to their unintelligent comprehension of what they were doing. Had the lodge been represented by an

intelligent agent, there would have been no misunderstanding. Mr. Graff, however, has a clear recollection of what occurred, and, as he is an intelligent and disinterested witness, I see no reason to doubt his statement, corroborated, as it is, by facts and circumstances which are not and cannot be denied. Complainant, so Graff states, told him that his brother had given him the legacy in question, but that· he did not intend ,to transfer ·it to the society; that he wanted it to go to his children. Graff, like Jansen, appears to have thought that this legacy was a mere contingency; that it did not come under the designation "property," and that as the complainant had no property other than this, it was unnecessary for him to sign any deed. He thereupon drew an affidavit, in which it was stated that complainant was "in indigent circumstances, without property, either real or personal, wearing apparel excepted." This the complainant swore to, and then Graff sent it, with a letter, as he thinks, to the superintendent of the home. He says that he received a reply (which he has mislaid), telling him that the signing of the deed was a mere form. While the superintendent denies writing such a letter, it is clear that the affidavit reached one of the company's officers, for it was produced from their custody on the trial. It is an undeniable, and, as it seems to me, an important, fact in the case, that Wirsching did not gain admission to the home by any representation that he possessed property. His denial that he possessed any is found not only in his affidavit, but also in his answer to the printed question, to which I have already alluded. On receipt of the reply, whether it came from the superintendent or some one else, Jansen and complainant went again to Graff's office. The subject of the legacy was again referred to and Graff told complainant that he could sign the deed without transferring it. He did not translate the deed *verbatim,* but merely stated the effect of it as he understood it, viz., that it was a conveyance of such property as was coming to complainant; as might be sued for at the time he entered the home. He told him that the legacy would go just as he desired. Now, in this, Mr. Graff seems to have been laboring under a confusion of ideas, but, in point of fact, there can, I think, be no reasonable doubt that the deed was

signed and acknowledged under a misapprehension of its effect. On its receipt by the lodge, a permit, dated June 6th, 1902, was sent, admitting complainant to the home. He remained there about nine months. On December 26th, 1902, the widow of complainant's brother died, and in March, 1903, he was first informed that the society claimed the legacy. He thereupon left the home, and, after consulting counsel, immediately commenced this proceeding.

On this state of facts, I think the complainant is entitled to relief. To correct or cancel deeds on the ground of mistake, when the mistake is clearly shown, is one of the familiar duties ,of a court of equity. *Loss* v. *Obry, 22 N. J. Eq. (7 C. E. Gr.) 52; Waldron* v. *Letson, 15 N. J. Eq. (2 McCart.) 126; Firmstone* v. *De Camp, 17 N. J. Eq. (2 C. E. Gr.) 317; Zingsem* v. *Kidd, 29 N. J. Eq. (2 Stew.) 516.* There is a distinction, however, between such mistakes as are mutual—that is, shared in by both parties—and such as are unilateral—that is, made on the part of one of the parties only. In the former case the remedy is reformation; in the latter, rescission. *Green* v. *Stone, 54 N. J. Eq. (9 Dick.) 396.* The case in hand is somewhat peculiar in this regard: The grand lodge was distinctly informed, both by the answer to the printed question and by the affidavit, that complainant had no property. It does not pretend to have had any information to the contrary. It must, therefore, have been under the impression that Wirsching was penniless. It admitted him to its home on this assumption, and their error was one of fact. On the other hand, the mistake of Graff was one of law. He knew the fact, but he mistakenly supposed that the deed did not, in terms, transfer the legacy. The mistake of the complainant himself was one of fact, though not one of the same fact as to which the grand lodge was mistaken. Being unable to read and write English, he relied upon Graff to make known to him the contents of the paper, and Graff misinformed him, not intentionally, but because he himself misapprehended its legal effect. Had Graff translated the paper literally, then the complainant's mistake would have been one of law; but he did not; he merely told him, in substance, that the paper purported to convey such

property as might be sued for when he entered the home, and did not transfer the legacy; and so the complainant was misinformed, not merely as to the legal effect of the paper, but as to its contents. This was a mistake of fact, just as much as it was in *Loss* v. *Obry, supra,* where the grantor's scrivener inserted a description of an entire tract, instead of the part of the tract which it was intended to convey; or just as much so as it was in *Waldron* v. *Letson, supra,* where the scrivener failed to include in the mortgage all the land that it was intended to encumber. Under the facts as they appear in the case at bar, the minds of the parties cannot be said to have met. The remedy is therefore rescission, and this relief can be given without any injustice to the defendant, for it took the complainant into its home on the supposition that he had nothing; that he was a proper object of its care, because he had been for thirty years a Mason in good standing, and not because he was able to pay for or contribute toward his board and lodging.

*Fivey* v. *Pennsylvania Railroad Co., 67 N. J. Law (38 Vr.) 627,* was relied upon to defeat this action. That was a suit at law, in which the agreement set up in bar of the action was attacked for fraud. The court found that there was no fraud. The case is manifestly inapplicable.

I do not think it necessary to decide whether Jansen was the agent of the lodge or the agent of complainant. If the latter, then some of the evidence of conversations admitted in evidence on the assumption that proof that Jansen was defendant's agent would be given, may not have been competent. On the assumption that Jansen was complainant's agent and not defendant's, and without the aid of the doubtful evidence, the complainant has established his title to relief.

In his bill complainant offers to pay a reasonable sum for board and lodging while in the home. This will put the defendant in even a better position than it supposed it occupied at the time it received him.

The bill charges fraud. Of this there is no evidence. I think that under the circumstances each party should pay his or its own costs.

Mr. *William D. Wolfskeil,* for the appellant.

Mr. *Samuel Schleimer,* for the respondent.

PER CURIAM.

The decree in the above cause is affirmed, for the reasons given by Vice-Chancellor Stevens in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, FORT, PITNEY, SWAYZE, VREDENBURGH—6.

*For reversal*—GARRISON, VROOM, GREEN, GRAY—4.