CHELSEA NATIONAL BANK

*v.*

ROBERT S. SMITH.

[Submitted and decided March 6th, 1908.]

1. Where complainant's grantor, in contemplation of securing a certain hotel building, agreed to lease it to defendant upon certain terms, a formal lease to be executed by the parties in accordance with the agreement after the lessor had acquired title, and, in executing the formal lease thereafter, the annual rental was, through a clerical error, stated to be less than that agreed upon, the agreement cannot be treated as a present demise, so as to afford complainant a legal remedy thereunder.

2. The general rule of equity is that, to warrant the reformation of a contract for mistake, the mistake must be mutual, while in the case of a unilateral mistake the remedy is rescission; but equity will reform a contract in the case of a mistake of one party accompanied by fraud or other inequitable conduct by the other party.

3. Complainant's grantor agreed to lease certain property to defendant for four years after he had acquired it, the contract stating the annual rental to be paid, and the time of payment, &c., the parties to execute a formal lease pursuant thereto after the lessor had acquired the property, and, the latter having thereafter acquired it, a lease was prepared and signed by the parties, but through a clerical error the annual rental stipulated

was less than that stated in the contract, the total rentals for the four years being the same. The lessor signed the lease, believing its terms to be the same as the contract, but defendant testified that he noticed the annual rental was less, but did not mention it, as it was his intention to refuse to sign the lease until he discovered the change in the rental stipulated.—*Held*, that defendant, by his silence, having led the lessor to believe that he was signing the lease called for by the contract, equity will reform the lease to conform to their agreement.

On bill for reformation of lease. Heard on bill, answer, replication and proofs.

May 14th, 1904, one Jere H. Nixon and defendant executed a written agreement wherein, after a recitation that Nixon was about to acquire title to a property known as the Hotel Elwood at Atlantic City, it was agreed that upon receiving title Nixon was to execute a lease for the property to defendant dated March 1st, 1904, for the term of four years at the annual rent of $4,700. Then followed an enumeration of the times when the rent should be paid. The rent for the first year was divided into six payments to be made on dates specified, aggregating $4,700. The rent for each of the three succeeding years was divided into eight payments to be made on dates specified, also aggregating $4,700 annually. Other terms of the proposed lease, which are here immaterial, were also specified. Title to the premises was conveyed to Nixon, as anticipated, and he handed the agreement to his attorney to have a lease typewritten pursuant to the agreement, and notified defendant that the lease would be ready for execution at the attorney's office at a time named. On the day named the parties met at the attorney's office and executed the lease. The evidence discloses that the typewriter who prepared the lease made a clerical error by omitting from the lease one of the eight enumerated annual rent payments specified in the agreement for the years succeeding the first year. This made the lease read for a term of four years at the rental of $18,800, as provided in the agreement; but the specific payments enumerated in the lease for the years succeeding the first year were but $4,000 annually, instead of $4,700, annually as provided in the agreement; the omitted payment being that of August 8th, for $700 each year. The lease so drawn was handed to the parties by the attorney

and was then and there executed by them without discussion or comment touching the variance between the agreement and the lease. Nixon signed the lease without observing the error, and believing that the rent installments had been accurately copied from the agreement into the lease. Defendant testifies that he observed that the payments enumerated in the lease for the years succeeding the first year were $700 less annually than the agreement called for; but states that he made no comment touching the fact. The reason given by him for his conduct is that he had, after signing the agreement, determined to violate it and to refuse to sign a lease because of facts which he had ascertained touching repairs to the property; but that when he observed the lesser rent payment enumerated in the lease for the second, third and fourth years of the term, he changed his mind and accordingly signed the lease. Nixon, in fact, held title to the property in trust for complainant and was acting for complainant throughout, and after the lease was signed, he conveyed the legal title of the property to complainant. Rent was paid to complainant pursuant to the terms of the lease for the first year and up to the date of the omitted installment in the second year. It was then that complainant first learned of the error of the typewriter, and filed the present bill to reform the lease so that it may be made to conform to the terms of the written agreement.

*Mr. Clarence L. Goldenberg,* for the complainant.

*Mr. John J. Crandall,* for the defendant.

LEAMING, V. C.

The agreement cannot be treated as a present demise so as to afford complainant a legal remedy under it; for the agreement contemplates the execution of a formal lease, and by its terms title was to be acquired by the lessor before a demise could be made. *Wood L. & T.* § *183.* It may be that a bill for the specific performance of the agreement would have been an appropriate remedy for complainant, as is forcefully urged by defendant; but I am entirely satisfied that the remedy by reformation of the lease, as here sought, can be appropriately awarded. The general

rule of equity is that to warrant the reformation of a contract for mistake, the mistake must be mutual; whereas in the case of an unilateral mistake the remedy is rescission. But a court of equity will reform a contract in the case of a mistake of one party accompanied by fraud or other inequitable conduct of the other party. *4 Pom. Eq. Jur. (3d ed.)* § *1376.* The present case is well within that rule. The lessor believed that the lease was drawn to conform to the written agreement. Defendant observed that it was not so drawn. No negotiation or discussion had been had touching any reduction of rent, and defendant must have known that the variance between the agreement and the lease was a clerical error. The single fact that the amount named in the lease as the total rent for the four years was the same as provided in the agreement, and that the installment payments aggregated a lesser amount, disclosed the existence of a clerical mistake. I cannot entertain the slightest doubt that defendant well knew that the lessor was signing the lease under the belief that it conformed to the agreement, and also that he well knew that his silence would operate to enable him to procure the terms not agreed upon, and that he also intended that his silent concealment should so operate. To adopt the language of *Cubberly* v. *Cubberly, 39 N. J. Eq. (12 Stew.) 514,* the rent payment now in question was kept out of the lease by the covinous contrivance of defendant. Under these circumstances, defendant, by his conduct in effect, asserted to his lessor that he was executing the lease called for by the prior agreement. Under the lease so procured he has occupied the demised premises until this time, and now seeks to avoid the rent payment which his wrongful conduct induced his lessor to believe he had stipulated to pay. Under these conditions there can be no doubt of the power and duty of a court of equity to reform the lease so that it may read as the agreement of the parties provided it should read. I will advise a decree to that effect.