[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 435 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 436 
This is a suit seeking the rescission of a bid made by the plaintiff to the defendant for certain work to be performed in the City of Atlantic City, and the return of a deposit of $5000 accompanying said bid.
The facts adduced at the time of trial exhibited that on August 23, 1945 the City of Atlantic City, having theretofore advertised that it would receive bids for the performance of certain work, the plaintiff submitted its bid for the repair of concrete sub-structures in the construction of a new boardwalk. Accompanying said bid, in accordance with the terms of the advertisement and specifications, plaintiff deposited a check for $5000 to assure its execution of the contract, if it were the successful bidder. There was a total of six other bidders who sought this contract on the day and time above set forth. When the bids were opened it was disclosed that plaintiff was the low bidder with a price of $143,171 and that the next highest bid was $205,395. The highest bid received was $334,604. As might have been anticipated, the difference in the bids somewhat upset Harry L. Halloran, president of the plaintiff corporation. When he returned to Philadelphia, the principal place of business of the corporation, he discovered, on August 24, 1945, that he had made an error in his computation and that the price which he bid should have been $193,421. Upon the discovery of this error he immediately called Director William F. Casey, a City Commissioner of the City of Atlantic City, who had charge of the department concerned with the boardwalk, and suggested that he had made an error in his bid and would like to discuss the same with the Director. Director Casey replied that the entire city commission would meet during the following week and suggested that if Halloran desired he could then attend the meeting and explain the situation to the governing body of *Page 437 
Atlantic City. Halloran did attend the meeting referred to and advised the city commission that he had made an error in computation and was withdrawing his bid. He further advised that the discrepancy was so great that the plaintiff could not proceed with the contract and, as a matter of fact, it was doubtful whether the plaintiff could obtain a performance bond as required under the specifications. He was then informed that the city commission would take the matter under consideration. At a regular meeting of the commissioners of the City of Atlantic City the contract was awarded to the plaintiff on September 14, 1945. Plaintiff was thereupon notified that it had been awarded the contract and a form of said contract was forwarded to it for execution. In the face of the error in computation, plaintiff was unable to obtain a performance bond as required and thereupon returned the contract to the defendant, setting forth that not only would it sustain a loss if it were compelled to complete the contract, but that it was impossible to obtain the performance bond required. The defendant thereupon declared the $5000 deposited by plaintiff forfeited.
Plaintiff's explanation of the cause of the error in computation was as follows: Halloran, together with one John Sloan, general superintendent of the plaintiff corporation, prepared the estimates on the cost figures for the contract. They examined the site of the work for this contract and for two other contracts for which defendant had advertised it would receive bids, a week or more in advance of the date for submitting the bids. During the succeeding week, other employees of the plaintiff as well aided in obtaining prices for materials, sub-contracts, etc. With these prices in hand, Halloran and Sloan commenced correlating the various figures on the contract here in question, as well as the two other contracts above referred to, on Tuesday afternoon, August 21, 1945. They continued their computations Tuesday evening, Wednesday afternoon and Wednesday evening, until the early hours of Thursday morning. Halloran testified that he had only one hour of sleep before all three bids were submitted on Thursday, August 23, 1945. The method pursued, which *Page 438 
apparently is the normal ordinary method adopted for preparing estimates on work of this type, was for Halloran and Sloan to compute the cost of the various items on separate work sheets. The per item unit for direct or gang cost was transferred to one sheet and the total general cost for all items to a second sheet. The first sheet represented the actual field cost per item,i.e., labor, materials, etc. The second sheet represented the general cost attributable to the job, i.e., field office, tools, insurance, taxes, etc. The figures on this second sheet should have been distributed among the direct cost item for each unit on the first sheet. This analysis of cost, together with estimated profit, comprising several different sheets, was then transposed to the bid form. The second sheet, representing the overall cost, had apparently been mislaid, or in any event was not used in finally determining the costs. As a result, when the final estimate was prepared, an item of $50,250 was omitted. The explanation for this mistake, given by Halloran and Sloan, was that they both were tired, having worked almost continuously from Tuesday afternoon until early Thursday morning, and that each one had anticipated that the other had included the costs in the computation. They as well testified that this is the customary manner in which their bids had been made up, and in the years they had been in business, such a mistake had never been made before.
In order to determine the rights of the several parties it is first necessary to consider the nature of the "bid" submitted to the defendant.
In Lupfer Remick v. Freeholders of Atlantic, 87 N.J. Eq. 491,100 Atl. 927, the court said at page 497:
"A competitive bid submitted under statutory privilege and regulation is in the nature of an option to the municipality, based upon a valuable consideration, to which the principles of law governing options, generally, are applicable. The consideration passing is the privilege of bidding and the legal assurance to the successful bidder of an award as against all competitors. Such an option pending action consistent with its terms, expressed or implied, is a vested right of contract, of which the municipality cannot be deprived, except perhaps by its consent, and is remediable at law by an action for damages, or enforceable in equity by specific performance, if *Page 439 
feasible, or may be summarily dealt with by forfeiture of the penalty prescribed. To sanction any other rule would open the door to fraud, and render wholly abortive the legislative scheme for public competitive bidding."
A competitive bid submitted, as here, under the statute, is therefore an option.
An option for which a consideration has been given is both an offer and a unilateral contract. Vol. 5, Williston onContracts, sec. 1441, page 4025; 12 Amer. Jur., sec. 27,page 525.
In Schlein v. Gairoard, 127 N.J. Law 358,22 Atl. (2d) 539, the court said at page 359:
"An option is a continuing offer upon a sufficient consideration. So long as it remains unaccepted it is a unilateral writing lacking the mutual elements of a contract, but when accepted an executory contract arises mutually binding upon the parties. The distinguishing characteristics of an option is that it imposes no binding obligation upon the person holding the option, aside from the consideration for the offer; but when the option, i.e., the continuing offer is accepted it ceases to be an option and becomes a mutually binding agreement of sale. 12 Amer. Jur.
525, sec. 27."
Quite plainly, this is a unilateral mistake in a contract for which equity may, under certain circumstances, grant relief by way of rescission.
In Wirsching v. Grand Lodge, c., 67 N.J. Eq. 711,56 Atl. 713, the court said at page 714:
"To correct or cancel deeds on the ground of mistake, when the mistake is clearly shown, is one of the familiar duties of a court of equity. Loss v. Obry, 22 N.J. Eq. (7 C.E. Gr.) 52;Waldron v. Letson, 15 N.J. Eq. (2 McCart.) 126; Firmstonev. De Camp, 17 N.J. Eq. (2 C.E. Gr.) 317; Zingsem v. Kidd,29 N.J. Eq. (2 Stew.) 516. There is a distinction, however, between such mistakes as are mutual — that is, shared in by both parties — and such as are unilateral — that is, made on the part of one of the parties only. In the former case the remedy is reformation; in the latter, rescission. Green v. Stone, 54N.J. Eq. (9 Dick.) 396."
In Green v. Stone, 54 N.J. Eq. 387, 34 Atl. 1099, the court said at page 395:
"In granting relief on the ground of mistake, there is a distinction between the rescission and the reformation of a written instrument. A court of equity may rescind a contract for a mistake *Page 440 
which is unilateral — that is, a mistake on the part of one of the parties only. In such a case, the whole contract is set aside, and the parties restored to their original position."
See also Chelsea National Bank v. Smith, 74 N.J. Eq. 275;69 Atl. 533.
A mistake has been defined in Santamaria v. Shell EasternPetroleum Products, Inc., 116 N.J. Eq. 26; 172 Atl. 339, atpage 29:
"Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. Cumminsv. Bulgin, 37 N.J. Eq. 476. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where it arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake."
In the matter sub judice, we are confronted with the question of unilateral mistake.
The essential conditions to such relief by way of rescission for mistake are (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.
In Barlow v. Jones, 87 Atl. 649, where the facts were comparable to those sub judice, the court said as follows atpage 650:
"The question supervenes: Is it such a mistake as entitled the complainant to relief in the court of equity? A court of equity does not grant relief merely because a party has mistakenly entered into a contract. Whether equity will relieve in any particular case must be determined by the importance of the mistake — whether it can be rectified without injurious results to the other party who may have assumed obligations or changed his posture upon the supposition that the contract was a valid and enforceable one, and whether the mistake was or was not the product of gross negligence on the part of the party asking for relief." *Page 441 
In Dillctt v. Kemble, 25 N.J. Eq. 66, the court said atpage 67:
"Equity will not assist a man whose condition is attributable to his failure to exercise that diligence which may be fairly expected from a reasonable person."
In DuPont Chemical Co. v. Buckley, 96 N.J. Eq. 465, atpages 466 and 467; 126 Atl. 674, the court said:
"Nor can the equitable notion of mistake arise when the mistake is the result of complainant's negligence. Prof. Pomeroy thus concludes his analysis:
"`Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both of the parties to a transaction, but without its erroneous character being intended or known at the time.' 2 Pom.Juris., sec. 839.
"The degree of negligence which denies equitable relief is defined in a subsequent section as follows:
"`Where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty, a court of equity will not interpose its relief.' Ibid, sec. 856."
It becomes important to determine whether the plaintiff promptly rescinded its option given to the defendant or, otherwise stated, whether it rescinded a unilateral contract, and whether the defendant's conduct was conscionable. From the facts as above set forth, which are uncontroverted, it appears that before the defendant had accepted the offer of the plaintiff, the plaintiff apprised it of the error and withdrew its offer or option. This, in effect, was a rescission of the option. Both notice of the error and advice of the rescission were promptly given to the defendant prior to the awarding of the contract to the plaintiff. Not only was the mistake of so great a consequence, but the defendant's conduct as well was such as would make an enforcement of the contract unconscionable.
There can be no doubt that the matter to which the mistake related was a material feature of the contract. *Page 442 
Under the facts here present, the plaintiff exercised a reasonable degree of care in preparing its bid. It was not guilty of a lack of that degree of care which a reasonably prudent person should exercise.
The facts proven herein further demonstrate that relief by way of rescission could be accomplished without serious prejudice to the defendant, except for the loss of its bargain, and this is not a sufficient ground to deny relief. Barlow v. Jones, supra.
Therefore, it is held that a unilateral mistake existed in the preparation of the plaintiff's bid and that under the facts here present, such bid was promptly rescinded within time.
It is further held that under the facts here present the plaintiff is entitled to the return of the money deposited with its bid.
In Lupfer Remick v. Freeholders of Atlantic, supra, the court said at page 499:
"That a court of equity has jurisdiction to relieve from the enforcement of a forfeiture on legal or equitable grounds is undoubted. Barlow v. Jones, 87 Atl. Rep. 649."