58 N.J. Super. 240 (1959)
156 A.2d 36
GREAT AMERICAN INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
MORRIS YELLEN, DEFENDANT-RESPONDENT, AND JAMES DE RITTER, DEFENDANT-CROSS CLAIMANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1959.
Decided November 27, 1959.
*242 Before Judges CONFORD, FOLEY and MINTZ.
Mr. Samuel A. Gennet argued the cause for plaintiff-appellant.
Mr. George W. Wolin argued the cause for defendant-respondent Morris Yellen.
The opinion of the court was delivered by CONFORD, J.A.D.
The plaintiff insurance company sued to recover the sum of $463.05 allegedly paid to defendants by mistake on a claim of fire loss. The district court judge, sitting without a jury, found for defendants after excluding certain evidence offered by plaintiff to substantiate its contention of mistake. Defendant De Ritter's cross-claim against defendant Yellen was allowed to the extent of 75% of the sum mentioned. That ruling is not involved in this appeal. Plaintiff's appeal is before us upon a statement of facts and proceedings certified by the trial judge without objection or exception of either party. The material facts are as follows.
Defendant De Ritter held a fire insurance policy on household contents at his Paterson home issued by plaintiff. He testified that on January 17, 1958 he smelled smoke in his cellar. He did not see any flame but called the fire department. A fireman testified that when he arrived there he found a "slight haze and smell of burning rubber" in a washing machine, which was "hot." On cross-examination, he said, "There could have been a fire." De Ritter called the matter to the attention of his insurance agent. On January 21, 1958 a Mr. Robb from the insurance company came, *243 made an inspection, said he "had no claim," but offered to return if he "could show a case."
Robb testified he was an adjuster employed by the General Adjustment Bureau. Plaintiff directed him to investigate the De Ritter claim. He did so but found no evidence of "hostile fire." He gave it as his opinion that there had been an electrical disturbance in the washing machine motor not covered by the policy. He told De Ritter "to forget the claim unless there was further evidence of hostile fire."
Later Yellen, a public adjuster, solicited De Ritter and made an agreement with him to prosecute the claim on a 25% contingency basis. De Ritter testified he told Yellen that Robb, an adjuster, had turned down the claim; also that Yellen told him it was a difficult type of case. Yellen testified in corroboration of De Ritter as to this, saying he explained to De Ritter that "the companies did not readily make payment on this type of electrical disturbance" and that he told him "he could recover about $150 damage for him." Yellen filed a proof of loss directly with the plaintiff for damage to furniture and washing machine in the sum of $463.05.
The company received the proof of loss from Yellen March 18, 1958 and issued its draft for the exact amount of the claim to Yellen and De Ritter on March 21, 1958. The court excluded several attempts by plaintiff to have Robb "testify as to what the usual practice was where an adjuster is representing an insurance company on an investigation and payment of losses." It was explained at the argument that the proof would have been that adjusters for claimants customarily negotiate claims with and file proofs of loss through company adjusters where such have been assigned to investigate a claim.
The trial court, on objection, also refused to allow plaintiff's supervisor in charge of proofs of loss and issuance of drafts to show the usual procedure in checking proofs and as to the payment of losses within the company organization. At the argument it was indicated the proof would have been *244 that the company clerk receiving a proof of loss is required to ascertain its status as to approval by the company adjuster before processing the claim for payment and that this step was omitted in the present case through mistake or inadvertence, resulting in the mechanical issuance of the check to defendants.
In its findings the trial court referred to the provision of the policy in this case that "the insured shall render to this Company a proof of loss signed and sworn to"; also that "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein." The court stated that "for the above reasons" (the policy provisions) the tendered proof as to company procedure "in checking proofs and payment for losses" within the plaintiff organization "was held to be inadmissible." It was stated in the finding, in effect, that the payment by the company was not recoverable because the check had been issued "in settlement of the claim" after the company had received due proof of loss as required by the policy.
The theory of the action is undue enrichment of the defendants through payment by plaintiff under a mistake of fact. The defense is stated to be that an insurance company cannot recover a payment it makes on a policy claim "under an alleged mistake of fact in the absence of fraud."
It is the general rule that one who has paid money under a mistake of fact but for which payment would not have been made may have restitution from the payee notwithstanding that the mistake was unilateral and a consequence of the payor's negligence, providing, however, that such restitution will not prejudice the payee. Restatement, Restitution (1936), § 59, p. 232; 70 C.J.S. Payment § 157(c), (d), pp. 370-371; 40 Am. Jur., Payments, § 194, p. 848; Annotation, 40 A.L.R.2d 997 (1955).
*245 Exemplifying the situation of prejudice to the payee is Behring v. Somerville, 63 N.J.L. 568 (E. & A. 1899). As to the effect of negligence inducing the mistake by the party seeking equitable relief for mistake, generally, see Crane v. Bielski, 15 N.J. 342, 347 (1954); Conduit & Foundation Corp. v. City of Atlantic City, 2 N.J. Super. 433, 440-1 (Ch. Div. 1949), in both of which relief was allowed.
While the rule of restitution, as just stated, is generally available to insurance companies making payments on policies, Annotation, 167 A.L.R. 470, 471 (1947), there is a well-defined exception, sometimes described as "assumption of the risk," in cases where the insurance company deliberately elects to make payment of a claim on a policy although it is conscious that it does not know all the facts material to its liability to the payee. 167 A.L.R., op. cit., supra, at page 476. Later discovery by the company of a state of facts disestablishing the validity of the claim will not, in such a case, require a restitution of the payment where there is no showing of fraud by the payee. Grand Trunk Western R. Co. v. Lahiff, 218 Wis. 457, 261 N.W. 11, 13 (Sup. Ct. 1935). The cases in this State applying this rule, Dobbs v. New Amsterdam Casualty Co., 101 N.J.L. 176 (E. & A. 1925) (where question arose on an action by assured to compel performance by company of agreement to settle claim); General Accident Fire and Life Assurance Corp., Ltd. v. Batterson, 14 N.J. Super. 436 (Ch. Div. 1951), appear to be guided by the analogy of the binding effect of a compromise of a disputed claim notwithstanding mistake of fact by one of the compromising parties, as in Worcester Loom Co. v. Heald, 78 N.J.L. 172 (Sup. Ct. 1909); and see De Caro v. De Caro, 13 N.J. 36, 43 (1953). Since, however, the rule applies even where the insurance company pays 100% of the claim, its rationale might more appropriately be regarded as constituted by the public policy of attaining finality by enforcement of the intent of the payor to terminate a dispute over a claim.
*246 Of major import in applying the law to the case here presented is the philosophy of the rule of restitution as one generated by considerations of equity and fair dealing. It is considered unjust enrichment to permit the recipient of money paid under mistake of fact to keep it unless the circumstances are such that it would be inequitable to require its return. We are clear that the testimony excluded by the trial court was material to a solution of the controversy on equitable principles and consistently with the rules stated above. Prior to the receipt of the proof of loss from Yellen the plaintiff company obviously had no intention of paying defendant's claim, regarding it as unsupported factually and being of no mind to settle it in any manner on the facts then known. The proofs excluded apparently would have (1) tended to explain the nature of a clerical mistake inside the administrative organization of the corporation which resulted in the claim being paid in its full amount, practically by return mail, notwithstanding that a routine check of the matter by the clerk with the adjuster in charge would presumably have obviated any such payment; and (2) shown that by customary standards of dealing between public adjusters a claimant's adjuster clears a proof of loss with the company's adjuster, thereby tending to avoid such an inadvertence as occurred here. In respect to the excluded evidence first referred to, the fact-finder might have concluded on all the proofs that there was no conscious intent on the part of the company to make a payment on account of the claim. Distinguish both the Dobbs and Batterson cases, supra, wherein there clearly was such an intent. The materiality of the excluded evidence secondly mentioned is that such proofs might have led the fact-finder to conclude that the mistake resulting in the mechanical issuance of the check was contributed to by the by-passing of the company's adjuster by defendant De Ritter's agent, Yellen (the latter inferably familiar with the custom), a conclusion reasonably material to a determination as to whether it was equitable for the payees to retain the moneys so obtained.
*247 We are of the view that admission of the proofs in question at a retrial may, for the reasons indicated, well justify a conclusion that the payment was made by the plaintiff under a mistake of fact or state of mind of a kind warranting, under all the circumstances, restitution by the defendants. It does not appear that return of the payment will in any way prejudice De Ritter in maintaining an action on his claim. Our determination of this cause is expressly conditioned upon the stipulation that if plaintiff accepts the benefit of the judgment on this appeal it will not plead any period of limitations in the policy upon any action thereon by De Ritter.
The provisions of the policy relative to the filing of proofs of loss by the insured, cited by the trial court, do not militate against the soundness of the foregoing conclusions. These merely constituted a condition precedent to recovery. They do not derogate from the fact of mistake on the part of the company in making the payment nor from the possible contributive effect toward the mistake of the by-passing of the company's adjuster in the transmission of the proof of loss. In any case, even had plaintiff and Yellen justifiably deemed a filing of the proof of loss with the company a necessary step under the policy, they might still have notified the company adjuster that they were doing so, if that was the custom. This might possibly have obviated the inferentially accidental transmission of the $463.05 check (unless the very purpose was to accomplish such a result), an eventuality which must have struck them as strange, to say the least, in view of Robb's unequivocal rejection of the claim and Yellen's advice to De Ritter that it would be difficult for him to realize even as much as $150 in settlement of the matter.
Reversed and remanded for a new trial, conformably with this opinion. In view of the mistake being that of plaintiff's own employee, it will pay defendants' costs of this appeal and their taxed costs of the first trial, regardless of *248 the outcome of the retrial. Costs of the retrial will go in the regular course.
FOLEY, J.A.D. (dissenting).
I am constrained to dissent from the conclusion reached by the majority.
Perhaps our disagreement originates in a premise on which the majority rests its views that "prior to the receipt of the proof of loss from Yellen the plaintiff company obviously had no intention of paying defendant's claim, regarding it as unsupported factually and being of no mind to settle it in any manner." This was not found as a fact by the trial court and I do not believe the proof justifies such a finding by this court. The conclusion derives from the testimony of the adjuster, Robb, that he was of the opinion that the fire lacking hostility was not one for which the insured was entitled to payment under the policy. But this is not to say that the management of the company accepted and relied on his opinion and had taken an inalterable position against recognizing the claim, so that any subsequent change of position must be deemed to have resulted from a mistake for which restitution was obtainable.
The fallacy in the reasoning of the majority is that in adopting this premise it assumes the proffered proof of the alleged custom of the insured's adjuster to deal with the insurer's adjuster, and the intracompany system of processing claims, to have been evidence from which a mistaken departure from a decision the company had made with respect to the defendant's claim could be inferred.
I see the case differently. In the first place the burden of proving the mistake rested on the plaintiff and it is not to be presumed from the fact that the company paid a claim which it might have successfully resisted in litigation. Next, in the absence of fraud the mistake to be actionable must be one originating in a misconception of the basic responsibility which the insurer owes to the insured under the particular policy of insurance involved, as for instance the payment of a fire loss where coverage was extended only to *249 a casualty loss, or the payment of a greater sum than the policy calls for. The offers of proof here were not calculated to establish a fundamental misunderstanding of the obligation of the plaintiff to the insured. Rather they were designed to create an inference (1) that had the custom of inter-adjuster negotiation been followed and (2) had not a human error been made by some unidentified employee working in a chain of mechanical checking and cross checking of claims, the company necessarily would have declined to honor the claim here in question. The relevancy of these proofs depends on whether, if they had been received in evidence and had been fully accredited by the trier of the facts, they could have been made the basis of a finding of a unilateral mistake of fact such as would enable the plaintiff to effect recovery.
It is not questioned that De Ritter submitted his claim through Yellen in accordance with the policy provisions. This called upon the insurance company to either accept it or reject it. The company chose the former course, paid the claim and De Ritter in accepting the payment surrendered his chose in action. It is well established that evidence of usage or custom in a particular business or trade is admissible to show the implied understanding of the parties in the absence of express contract. But where there is a contract its terms must fix the rights of the parties and the terms cannot be varied by proof of custom. Schenck v. Griffin, 38 N.J.L. 462, 471 (E. & A. 1875). See also Rodgers v. Edward M. Rodrock Co., 98 N.J.L. 490, 492 (E. & A. 1923); Richmond v. Miller Rubber Co., 6 N.J. Misc. 787, 789 (Sup. Ct. 1928).
Nor do I think that proof of the mechanical handling of claims by the employees was relevant since the inference sought to be drawn from it, namely, that a clerk must have made a mistake else the claim would not have been paid, would not have sufficed to prove a mistake for which restitution can be had. Understandable is the necessity for the adopting of procedures in the transaction of large business *250 on a competitive basis, which transform the individuals who operate them on a production line basis into semi-robots. But where the machinery slips a cog the resultant loss is a risk which inheres in the nature of the operation and bears no relation to a genuine misunderstanding of fundamental right or obligation. Cf. Restatement, Restitution, § 12 (1936).
The claim here involved, if proved valid, was within the coverage of the insurance policy for which De Ritter had paid, and no taint of fraud on his part in his effort to collect it is even suggested. In these circumstances the transaction between the parties should be deemed to be concluded. Cf. General Acc. Fire & Life Assur. Corp. v. Batterson, 14 N.J. Super. 436, 439 (Ch. Div. 1951); Dobbs v. New Amsterdam Cas. Co., 2 N.J. Misc. 649, 651 (Sup. Ct. 1924), affirmed 101 N.J.L. 176 (E. & A. 1925). Public policy favors the settlement of disputes by granting finality to accord resulting from the voluntary acts of disputants. The policy would be badly served if the accord were left in a limbo in which finality depended upon a post-settlement determination of the efficiency of the settlor's clerical procedures.
I am satisfied that the court properly rejected plaintiff's offers of proof as being irrelevant and would affirm.