233 N.J. Super. 502 (1989)
559 A.2d 455
JOANN HAMEL AND RICHARD HAMEL, HER HUSBAND, PER QUOD, PLAINTIFFS-RESPONDENTS,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-APPELLANT, AND PRUDENTIAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 25, 1989.
Decided May 26, 1989.
*503 Before Judges ANTELL, DREIER and BROCHIN.
D'Amico & Cofone, attorneys for appellant (Bruce L. Magaw, on the brief).
Andrew S. Prince, attorney for respondents Hamel (Andrew S. Prince, on the brief).
Robert A. Auerbach, attorney for respondent Prudential Insurance Company (Randi S. Greenberg, on the brief).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
JoAnn Hamel was injured in an automobile accident. She and her husband, Richard P. Hamel, asserted a claim against William Snee, the driver of the other car involved in the accident.
Mr. Snee's automobile liability insurer was Allstate Insurance Company. The limit of his relevant coverage was $15,000, and, *504 because of the apparent severity of Mrs. Hamel's injuries, Allstate offered to pay that entire amount in exchange for a release.
Mr. and Mrs. Hamel had automobile insurance provided by Prudential Insurance Company which included underinsured motorist protection of $100,000. On March 31, 1988, Andrew S. Prince, Esq., the Hamels' attorney, wrote to Prudential as follows:
You should be aware that due to the seriousness of the injuries sustained by your insured, the insurance company for the driver of the other vehicle is contemplating on turning over the entire policy in the amount of $15,000.00. Due to the fact that the injuries sustained by Ms. Hamel are clearly in excess of the policy limits of the other driver, I am hereby putting you on official notice of the underinsurance claim of my client. If you wish to discuss this matter in more detail, please do not hesitate to contact me. In summary, it is my anticipation that we will clearly be making an underinsured motorist claim under the automobile policy of Joanne Hamel and her husband, Richard.
By letter dated April 12, 1988, Prudential replied as follows:
We have yet to receive an assets check back on the liable party and therefore, at this time, would not release our subrogation rights. If the liable party makes an offer to you for their policy limits, we would request that Ms. Hamel sign an underinsured partial release and trust agreement for us and then we would pay their policy limits to you so that we could proceed with subro[gation]. I would need verification in writing that they have offered their full policy limits.
Disregarding this warning that Prudential was not willing to release its subrogation rights, the Hamels' attorney sent Allstate an executed general release in its favor and in favor of Mr. Snee on May 17, 1988, requesting its $15,000 check within ten days. With his client's release and demand for payment already in Allstate's possession, Mr. Prince called Prudential to discuss the matter further, and he was informed that Prudential's investigation of the extent of Mr. Snee's assets was not yet completed. He then telephoned Allstate, requesting that it defer issuing its $15,000 check, and he was told that the check had already been mailed. It was received two days later, and it was retained unendorsed and uncashed.
On June 9, 1988, Mr. Prince was told by Prudential that its investigation was complete and that it would pay the Hamels $15,000 and exercise its right to be subrogated to their claim *505 against Mr. Snee. Allstate, however, took the position that the Hamels had released any claim against their insured. Prudential thereupon denied their claim under their underinsured motorist coverage because of their release of their cause of action against Mr. Snee.
The Hamels then commenced a declaratory judgment action against both Allstate and Prudential. They asked for a declaration that they could deposit the $15,000 check from Allstate and nonetheless collect on their claim against Prudential under their underinsured motorist coverage, or, alternatively, that their release in favor of Allstate and Mr. Snee was null and void, that Allstate's check could be returned, and that Prudential's subrogation rights were unimpaired. On the return date of an order to show cause why that relief should not be granted, the trial court ruled that the Hamels' settlement agreement with Allstate was rescinded and that its $15,000 check should be returned, that Prudential should pay them $15,000 and be subrogated to their cause of action against Mr. Snee, and that they would have the right to demand underinsured motorist benefits from Prudential.
Allstate has appealed, asserting that the settlement which it procured was binding and should not have been rescinded, but that because the Hamels "followed the procedures as outlined in Longworth v. Van Houten, [223 N.J. Super. 174 (App.Div. 1988)], they should be allowed to proceed with their underinsured motorist claim against Prudential." Prudential, which has not cross-appealed, contends that the release executed by the Hamels was properly rescinded, but that if it was not, then the Hamels have waived their underinsured motorist claim. The Hamels, too, argue that the decision of the trial court should be affirmed, or, alternatively, that they should nonetheless be allowed to proceed with their underinsured motorist claim against Prudential because they followed the procedures outlined in Longworth v. Van Houten, supra.
We do not agree that Mr. and Mrs. Hamel's attorney followed the procedures outlined in Longworth. His March 31, 1988, *506 letter to Prudential said only that Allstate was "contemplating" paying the full face amount of Mr. Snee's liability policy. Nevertheless, he caused his clients to release Allstate and Mr. Snee without Prudential's approval and without securing a determination by the court as directed by Longworth. His complaint and order to show cause for declaratory relief was filed only after he had already jeopardized Prudential's claim against Mr. Snee.
However, when Mr. Prince delivered his clients' executed release to Allstate, he was laboring under the impression that Prudential's delay in informing him of the results of its investigation of the extent of Mr. Snee's assets was tantamount to its consenting to waive its subrogation claim. Mr. Prince was mistaken. His mistake was material because he jeopardized the Hamels' claim against Prudential under their underinsured motorist coverage. Since Mrs. Hamel's injuries are said to be severe, and their policy provides up to $100,000 of benefits, their potential loss probably exceeds the $15,000 which Allstate paid on behalf of the tortfeasor. Under the circumstances of this case, this unilateral mistake constituted an adequate reason for rescinding the release, provided that no one was adversely affected except by the loss of his bargain.
The availability of rescission for mistake in New Jersey has been authoritatively described as follows in Green v. Stone, 54 N.J. Eq. 387, 395-396 (E. & A. 1896):
In granting relief on the ground of mistake, there is a distinction between the rescission and the reformation of a written instrument. A court of equity may rescind a contract for a mistake which is unilateral  that is, a mistake on the part of one of the parties only. In such a case, the whole contract is set aside, and the parties restored to their original position. But in the case of reformation of a contract or deed by altering or expunging some of the terms contained in it on the ground of mistake, the part improperly introduced into it will be altered or expunged, and the instrument will stand as reformed. To warrant reformation there must be a mutual mistake  that is, a mistake shared in by both parties. [Citation omitted.] Consequently, no relief can be granted for a mistake which is unilateral after the position of the parties has been changed so that the former state of things cannot be restored.
Under this principle, contracts based on bids flawed by unilateral mistakes have been rescinded and the bid deposits returned. *507 Cataldo Const. Co. v. County of Essex, 110 N.J. Super. 414 (Ch.Div. 1970); Conduit & Foundation Corp. v. City of Atlantic City, 2 N.J. Super. 433 (Ch.Div. 1949). A payment made by a liability insurer to a third party claimant as the result of the insurer's clerical error was restored to the insurance company. General American Ins. Co. v. Yellen, 58 N.J. Super. 240 (App.Div. 1959). The excess which a stock broker mistakenly paid for the purchase of a customer's stock was restored to the broker. Winslow Cohu & Stetson, Inc. v. Skowronek, 136 N.J. Super. 97 (Law Div. 1975). See also Wirsching v. Grand Lodge, 67 N.J. Eq. 711 (E. & A. 1905) (rescission of deed). Cf. Lampley v. Davis Mach. Corp., 219 N.J. Super. 540 (App.Div. 1987) (rescission of release for mistake which is referred to as mutual but which, from the reported facts, seems to have been unilateral).
In Conduit & Foundation Corp. v. City of Atlantic City, supra 2 N.J.Super at 440, Judge (later Justice) Haneman stated the conditions for granting rescission in cases of unilateral mistake as follows:
(1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable;
(2) the matter as to which the mistake was made must relate to the material feature of the contract;
(3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and
(4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.
Cf. Restatement, Contracts, Second, § 153(a).
In the present case, the consequence of the Hamels' attorney's mistake in transmitting their executed release to Allstate without Prudential's approval was potentially so serious that to enforce the release would be unconscionable. Mrs. Hamel apparently suffered serious injury through no fault of her own. Their underinsured motorist coverage, for which they paid insurance premiums, is the only source from which substantial compensation is readily available, and the mistake threatens to cause a forfeiture of that compensation.
*508 Clearly, the mistake relates to a material feature of the contract. The purpose and effect of a general release is to terminate all further claims against the releasee. It is that effect of the release which threatens the Hamels' underinsured motorist benefits because, if Mr. Snee has assets from which recovery could be effected, the extinguishment of claims against him would prejudice Prudential's rights as subrogee.
As to the third requirement, however, if Mr. Prince's conduct is attributable to the Hamels, their transmittal of their executed release to Allstate without obtaining Prudential's approval was a failure to exercise "reasonable care." But, Conduit & Foundation Corp.'s requirement that the plaintiff have exercised reasonable care must be understood in the light of Crane v. Bielski, 15 N.J. 342 (1954), a case in which a mortgage foreclosure sale was set aside because of the mortgagor's unilateral mistake. Our Supreme Court said:
"Mistake," by its very definition, implies some degree of negligence. Human failing is its essence and it denotes error of judgment. However, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to set aside the sale. [15 N.J. at 348]
On the issue of whether, despite Mr. Prince's misjudgment, it would still be "inequitable and fundamentally unjust" not to set aside the sale, we agree with the trial court. If, as that court assumed, no one will lose anything except the benefit of the bargain, we would say, as the Supreme Court did in Crane v. Bielski, supra:
"Equity is equality," and if the facts here presented were as a matter of law insufficient to move the court, in its discretion, to set aside the [transaction], then a most stolid quality has crept surreptitiously into our equity jurisprudence, whose primary function over the many years has been the administration of essential and fundamental justice.
We find nothing in the record warranting a reversal of the relief granted upon the ground that it was "a mistaken exercise of judicial discretion." In fact, we are convinced that the trial court recognized and acted upon the maxim lying at the very foundation of equitable jurisprudence, that equity "will not suffer a wrong without a remedy." The court considered the problem encountered with reason and conscience to a just and equitable result. [15 N.J. at 349]
The question which remains to be answered, however, is whether the rescission of the Hamels' release and the return of *509 the $15,000 check which they received from Allstate would prejudice anyone else. Clearly, Allstate would not be prejudiced. It's exposure would remain the same as it was before the release was delivered, $15,000 plus possible costs of providing its insured with a defense. However, whether or not Prudential would be prejudiced depends upon whether its subrogation claim against Mr. Snee would be no worse after rescission of the release than it would have been had the release never been delivered. Since Mr. Snee is not a party to this proceeding, he may not be bound by the determination rescinding the release in his favor, and Prudential may find that its subrogation suit is barred. Furthermore, we cannot exclude the possibility that Mr. Snee could show that his case has been prejudiced in some way by the passage of time or by something which he did in reliance on the settlement. Accordingly, we cannot determine that the fourth prerequisite for rescission for unilateral mistake has been met, i.e., that rescission could be granted without serious prejudice to any other person except loss of the bargain. Such a determination can be made only on notice to Mr. Snee after he has been made a party.
This matter is therefore reversed and remanded for further proceedings in accordance with this opinion.