864 A.2d 428 (2005)
374 N.J. Super. 283
Stephanie VILLANUEVA, Plaintiff-Respondent,
v.
AMICA MUTUAL INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2004.
Decided January 4, 2005.
*429 Peter N. Laub, Jr., Raritan, argued the cause for appellant (Peter N. Laub, Jr. & Associates, attorneys; Mr. Laub, on the brief).
Christian C. LoPiano, Hoboken, argued the cause for respondent.
Before Judges WECKER, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
The issue raised by this appeal is an insurance company's right to rescind a settlement agreement when it discovers that it was mistaken about the limits of its policy.
Plaintiff, Stephanie Villanueva, was injured as a result of a February 1, 2002 motor vehicle accident. The driver and the owner of the other vehicle were insured by defendant, Amica Mutual Insurance Co. On February 11, 2003, Amica offered to settle Villanueva's claim against Amica's insureds for the sum of $35,000, based upon its review of liability and damages and its erroneous belief that it had issued a liability policy with a $35,000 limit of coverage. Villanueva accepted the offer and signed a release which she returned on February 24, 2003. Amica discovered shortly thereafter that it had made a mistake about its own policy limit, and that it actually issued a "limited" policy that provided liability coverage of only $10,000.[1] Amica promptly communicated its error to plaintiff's counsel, as evidenced in a letter dated March 11, 2003. It declined to comply with the original settlement agreement and instead offered $10,000 to settle Villanueva's claim against Amica's insured.
Villanueva filed suit against Amica, accurately alleging the procedural history and seeking to enforce the settlement agreement. Amica's answer included these defenses:
3. The Defendant acted under a mistaken belief of facts regarding the actual amount of policy limits.
4. The relief sought by the plaintiff would amount to unjust enrichment and is not enforceable.
....
6. The policy of insurance issued by this Defendant represents the full extent of all liability.
7. Plaintiff has failed to show justifiable reliance on the mistaken offer of policy limits.
....
9. In offering the full and actual limits of its policy to the plaintiff, this party has fully performed its obligation under the policy of insurance.
After a hearing on the return date of plaintiff's Order to Show Cause, the Law Division judge issued judgment against Amica, holding that Dobbs v. New Amsterdam Cas. Co., 101 N.J.L. 176, 127 A. 209 (E. & A.1925), was "controlling" and required enforcement of the settlement. We reverse.
We are convinced that the governing principle is to be found not in Dobbs, but in Young v. State Farm Mut. Auto. Ins. Co., *430 80 N.J.Super. 582, 194 A.2d 488 (App.Div.1963), and Hamel v. Allstate Ins. Co., 233 N.J.Super. 502, 506-08, 559 A.2d 455 (App.Div.1989).
Young involved an action to enforce a settlement promised by State Farm to a plaintiff injured by State Farm's insured. After obtaining the plaintiff's release in that case and issuing a check as promised, State Farm stopped payment when it discovered that its policy had actually expired a week before the accident at issue. Judge Conford, writing for this court, concluded that when a payment of insurance proceeds is induced by a mistake of fact, the insurer can rescind the settlement as long as the settling claimant would not be prejudiced thereby. Young, supra, 80 N.J.Super. at 585-86, 194 A.2d 488. Because the plaintiff in Young had filed a notice of intention with the Unsatisfied Claim and Judgment Fund Board pursuant to N.J.S.A. 39:6-65, the plaintiff would "still enjoy satisfaction of his claim at the hands of the Unsatisfied Claim and Judgment Fund Board" in the event of a ruling in defendant's favor on remand. 80 N.J.Super. at 586, 194 A.2d 488. Summary judgment in favor of the plaintiff was reversed, and the matter was remanded for determination of "the nature and circumstances of the [insurer's] alleged mistake."[2]Id. at 587, 194 A.2d 488.
In Young, Judge Conford followed the rationale of his earlier opinion in Great American Ins. Co. v. Yellen, 58 N.J.Super. 240, 156 A.2d 36 (App.Div.1959). Yellen involved a first  party fire insurance claim that the insurer had rejected but later paid by mistake as a result of a clerical error. The opinion in Yellen stated the general rule:
[O]ne who has paid money under a mistake of fact but for which payment would not have been made may have restitution from the payee notwithstanding that the mistake was unilateral and a consequence of the payor's negligence, providing, however, that such restitution will not prejudice the defendant.

[Yellen, supra, 58 N.J.Super. at 244, 156 A.2d 36 (emphasis added) (internal citations omitted).]
An exception, not applicable here, exists "where the insurance company deliberately elects to make payment of a claim on a policy although it is conscious that it does not know all the facts material to its liability to the payee." Id. at 245, 156 A.2d 36. Judge Conford suggested in Yellen that Dobbs"appear[ed] to be guided by the analogy of the binding effect of a compromise of a disputed claim notwithstanding mistake of fact by one of the compromising parties," in other words, that Dobbs might fit into that exception. Ibid.
In fact, Dobbs did not "mention the mistake rule at all." Young, supra, 80 N.J.Super. at 586, 194 A.2d 488. Recognizing the public policy favoring enforceability of settlements, Judge Conford nonetheless referred to enforceability of the settlement in issue as
subject to considerations "as to the fairness and equity of the settlement" ... [There is] nothing fair about enforcing a "settlement" agreed to by an insurance company when it was under the mistaken impression that it was on the risk when in fact it was not and when its immediate disavowal leaves the other party with all of his rights and remedies against the uninsured party fully intact.

*431 [Id. at 586-87, 194 A.2d 488 (internal citation omitted).]
The judge's description of the circumstances involved in Young closely resembles the circumstances here.
By contrast, in Dobbs, the plaintiff's insurance carrier initially offered to settle its insured's first-party claim for her employee's theft of cash and a ring from the insured's second home. After entering into a settlement and promising payment to its insured, the insuror determined that because the loss was not a burglary, it was not covered under the express terms of the insured's newly discovered, separate policy on this second home. The insurer then attempted to revoke its offer. With little analysis, the Court of Errors and Appeals affirmed the trial judge's decision that the carrier was bound by the settlement, citing Worcester Loom Co. v. Heald, 78 N.J.L. 172, 72 A. 421 (Sup.Ct.1909).
Worcester Loom, however, involved neither a mistake of fact nor an insurance claim. The plaintiff there merely sought to enforce an alleged oral agreement to compromise a contract dispute.[3] That case stands for little more than the general proposition that an oral agreement to compromise a dispute can itself be an enforceable contract. Id. at 175, 72 A. 421; see also Pascarella v. Bruck, 190 N.J.Super. 118, 124-25, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983). Thus the grounding of the Dobbs decision does not support its application to this case.
The application of equitable principles supports Amica's claim. In its defense of plaintiff's suit, Amica in effect sought rescission of the settlement agreement. We have held that where an insurance company pays a claim as a result of a unilateral mistake, restitution is an available remedy in the absence of detrimental reliance on the part of the payee. Yellen, supra, 58 N.J.Super. 240, 156 A.2d 36.
In such circumstances, while the payee has been enriched mistakenly at the expense of the paying party, equity will not unfairly force the payee to disgorge any profit to where that would be to the payee's detriment. The burden of proving a change of circumstances or other inequities sufficient to bar restitution is upon the payee.
[28 Williston on Contracts § 70:199 (Lord ed.1999) (citing Yellen, supra, 58 N.J.Super. 240, 156 A.2d 36)].
While an insurer's gross negligence in becoming aware of the coverage provided by its own policy may bar relief, even ordinary negligence will not, so long as the insurer has met its duty of good faith and fair dealing. 27 Williston on Contracts § 70:112 (citing Restatement (Second) of Contracts § 157).
The same principles logically govern where payment has not yet been made, that is, where the remedy sought for a unilateral mistake is rescission rather than restitution. In Hamel v. Allstate Ins. Co., 233 N.J.Super. 502, 506-08, 559 A.2d 455 *432 (App.Div.1989),[4] we discussed the remedy of rescission based upon unilateral mistake and listed the conditions required for such equitable relief:
(1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable;
(2) the matter as to which the mistake was made must relate to the material feature of the contract;
3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and
(4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.
[Hamel v. Allstate Ins. Co. supra, 233 N.J.Super. at 507, 559 A.2d 455 (quoting Conduit & Foundation Corp. v. City of Atlantic City, 2 N.J.Super. 433, 440, 64 A.2d 382 (Ch.Div.1949)).]
There can be no question that Amica's mistake respecting the policy limits was material to and an essential basis for the settlement offer. The key question is whether plaintiff has been unfairly prejudiced by being put back in the position she was in when she accepted the offer. In weighing the relative equities here, as we must, we find no indication in the record, the briefs, or the arguments of counsel that Amica's conduct reflected anything other than simple negligence  an honest mistake discovered and communicated promptly to plaintiff  or that plaintiff has suffered any legal prejudice as a result of that mistake. Under these circumstances, it would be unconscionable to enforce that settlement.
We were informed at oral argument that plaintiff's tort action against Amica's insured is pending in the Law Division, that there is no statute of limitations problem in that action,[5] and that plaintiff has underinsured motorist (UIM) coverage of $25,000. Obviously, plaintiff is disappointed at having an agreeable settlement disintegrate. But she has failed to demonstrate that she was in any worse position when she learned of the mistake than she would have been had Amica recognized its $10,000 policy limit when it undertook settlement negotiations with her. Unlike Young, there is no question about the actual Amica policy limit, and plaintiff has not alleged specific prejudice as a result of detrimental reliance. No material issue of fact remains to be resolved, and unlike Young, a remand is unwarranted. We reverse the judgment in favor of Villanueva and dismiss her complaint against Amica.
We have considered one additional question not raised by the parties: whether Amica's insureds, whom Villanueva agreed to release in exchange for $35,000, and who are not parties to this action, will be prejudiced as a result of our decision. Because they apparently have not been placed on notice of Villanueva's action to enforce the settlement against Amica, or of this appeal, [6] it is impossible for us to determine with certainty whether either insured *433 has or will suffer legal prejudice as a result. Obviously, the continuation of Villanueva's tort action exposes one or both of them to a verdict in excess of Amica's coverage. Amica's insureds, however, were never entitled to coverage in excess of $10,000, and Amica does not dispute its obligation to continue to provide a defense in Villanueva's tort action.
Amica is required to notify its insureds of our decision in this action. As defendants in Villanueva's negligence suit, their right to prove detrimental reliance upon the $35,000 settlement, if any, and if proven to seek an appropriate remedy against Amica, is preserved for that action. Compare Hamel, supra, 233 N.J.Super. at 509, 559 A.2d 455. While we do not further address the question of prejudice to Amica's insureds, we strongly suggest that even where there is no consent-to-settle provision in the policy, as there is not in a standard auto insurance policy, it behooves an insurer to place its own insured on notice of any settlement entered into on the insured's behalf, as well as any action to enforce or vacate such a settlement.
Reversed and remanded for entry of an order dismissing plaintiff's complaint.
NOTES
[1] N.J.S.A. 39:6A-3.1c.
[2] The decision was conditioned on the insurer's waiving the statute of limitations on remand.
[3] Worcester Loom was an appeal from judgment entered on a jury verdict. The parties' original contract provided for the plaintiff "to use its best endeavors to design, construct or reconstruct and perfect a loom," and for the defendants to pay for the work at agreed hourly rates. The issue for the jury was whether the parties had subsequently reached an enforceable oral agreement that in exchange for the defendants' prompt payment of a disputed bill under the original agreement, "plaintiff would, at its own expense, perfect the loom and make it work." Worcester Loom, supra, 78 N.J.L. at 173, 72 A. 421. The jury concluded that the plaintiff had made such an agreement, and the court therefore dismissed plaintiff's claim for payment of an additional invoice.
[4] In Hamel, an injured party's attorney mistakenly provided a signed release to the tortfeasor's carrier without the consent of the injured party's UIM carrier, and without realizing that doing so would destroy the carrier's subrogation claim and thus the injured party's UIM claim.
[5] We have some concern, however, with counsel's indication during oral argument that the Law Division in the tort action has not been apprised of this matter as it relates to readiness for trial.
[6] Counsel for both parties to this appeal informed us at oral argument that to their knowledge, the defendants in the auto negligence case have not been given notice of this action.