NAUGATUCK VALLEY DEVELOPMENT CORPORATION
*v.* ACMAT CORPORATION ET AL.
(4364)

DUPONT, C. J., HULL and DALY, Js.

Argued February 11—decision released April 7, 1987

*Thomas J. Byrne,* for the appellants (defendants).

*Kevin T. Nixon,* for the appellee (plaintiff).

HULL, J. The plaintiff claimed damages against Acmat Corporation (Acmat), the low bidder on a public construction project, and Insurance Company of North America, the surety on Acmat's bid bond, when Acmat failed to sign the contract awarded to it on the ground that its bid was too low because of inadvertent error on its part. The court awarded the plaintiff $14,240 liquidated damages plus attorney's fees. The defendants appealed claiming that the court erred in requiring that Acmat be free of negligence in the preparation of its bid before the defendants could avoid obligation for damages to the plaintiff caused by Acmat's erroneous bid.[1]

---

[1] The defendants made a second claim of error in the court's award of attorney's fees to the plaintiff. Since the plaintiff abandoned its claim for reasonable attorney's fees in its brief we do not consider this claim of error.

The trial court's underlying findings of fact are not in dispute. The factual conclusions and legal standards applied in reaching its judgment are the essence of this appeal.

On September 17, 1979, bids were opened for the alterations of an office building for the plaintiff as follows: Acmat Corporation, $285,000; Gunnoud Construction, Inc. (Gunnoud), $380,000; R.A. Civitello Co., Inc., $439,000.

In accordance with the invitation to bid, Acmat agreed that the bid bond "shall become the sole and exclusive property of the Naugatuck Valley Development Corporation as liquidated damages to the Naugatuck Valley [Development] Corporation, if the undersigned fails to execute a contract in conformity with the accompanying Form of the Agreement . . . after due notifications therefor in the Contract Documents." Acmat's agent attended the bid opening and became aware of the amounts of the three bids submitted, but Acmat did not notify the plaintiff that there was an error in the submission of its bid until October 1, 1979, fourteen days after the bid opening. At that time, the plaintiff called Acmat to schedule a contract signing, and was informed by Acmat that there was an error in the amount of the bid. Acmat wanted to negotiate a new contract figure somewhere between its bid of $285,000 and Gunnoud's in the amount of $380,000. The plaintiff told Acmat that under the rules governing the bidding of public contracts it was impossible to negotiate a new figure. Acmat notified the plaintiff by letter dated October 8, 1979, that it would not sign the contract.

The plaintiff's complaint alleged in count one that it is entitled to recover $14,250 as "agreed upon liquidated damages in the amount of said bid bond" as a result of Acmat's breach of contract, and in the sec-

ond count that it is entitled to recover "substantial and additional costs of damages" resulting from such breach of contract. Since those "substantial and additional costs of damages," including the $95,000 difference between Acmat's and Gunnoud's bid, extra material cost of $3887.27 and extra heating costs of $8105.32, amount to a total of $106,992.59, the court considered the second count first.

The plaintiff claimed that Acmat's arithmetical error was deliberately intended to enable it to get the job at a higher figure than its bid, thus indicating a fraudulent intent on Acmat's part. The court reached two conclusions concerning this claim: (1) a careful review of the plaintiff's written claims and the testimony of Acmat's agent Henry Nozko, Jr., did not disclose any evidence of fraudulent intent, but rather an inadvertent error on Acmat's part and (2) the fraud must be specially pleaded. The plaintiff did not do this. Because of the lack of evidence of fraud and the failure to plead fraud, the court denied the plaintiff recovery under count two.

Concerning count one, the court held that the plaintiff was clearly entitled to liquidated damages of 5 percent of Acmat's bid, or $14,250. In so doing, it specifically relied on *Colella* v. *Allegheny County,* 351 Pa. 103, 137 A.2d 265 (1958), which enumerates the Pennsylvania firm bid rule in cases of this nature. The court also distinguished *Geremia* v. *Boyarsky,* 107 Conn. 387, 140 A. 749 (1928), the seminal case in establishing the standards applicable to an inadvertent low bid case, by emphasizing that in *Geremia* a private contract was involved and the plaintiff was attempting to take advantage of the defendant's low bid of which he was aware. The court apparently did not consider *Regional School District No. 4* v. *United Pacific Ins. Co.,* 4 Conn. App. 175, 493 A.2d 895, cert. denied, 196 Conn. 813, 494 A.2d 907 (1985), decided after the trial

in this case but before the court's memorandum of decision. *Regional School District No. 4,* building on *Geremia,* established the appropriate criteria in such a case.

The trial court in this case concluded: "To deny the plaintiff damages under this Count would be inappropriate especially where it appears from the evidence that [Acmat] attempted to take an unfair advantage of the situation by learning the amounts of the other bids and suggesting an agreement for a higher figure than their bid. To deny the plaintiff relief under these circumstances would encourage [Acmat] and other bidders on public contracts to carry on this practice in the future without fear of being accountable in damages. Accordingly, the liquidated damage agreement should come into play, and since the obvious negligence of [Acmat] in failing to add the figures correctly and failing to recheck same caused substantial losses to the plaintiff, the agreed upon sum of $14,250 is awarded to the plaintiff, plus its costs and reasonable attorney's fees."

We agree with the defendants that the trial court erred in applying a firm rule that where a contractor makes a negligent mistake in a bid, the contractor and its surety are liable for the amount of the bid bond if the contractor withdraws its bid. In *Geremia* v. *Boyarsky,* supra, the defendant contractors submitted a bid of $1450.40 for painting and carpentry work. Because of an arithmetical mistake, the bid was $760 less than the total of the items included in the estimate. On the day the defendants signed a contract to do the work for $1450.40, they found the error and notified the owners. They offered to do the work for the true total of the items in their bid or for as low as any responsible contractor would perform the work. The owner had a good reason to know of the substantial error when the contract was signed but insisted on per-

formance of the contract. Since the defendants refused to perform the contract, the owner gave the job to another contractor for $2375, and sued the original bidders for damages.

The *Geremia* court denied the plaintiff any recovery on the ground that the bidders' mistake was so material and fundamental that it precluded a meeting of the minds necessary for the creation of a contract between the parties. The court based its decision on equitable principles stating: "It may be conceded that the error in addition made by the defendant Boyarsky, when he hastily totaled the items of his estimate at the request of the plaintiff, involved some degree of negligence. It would be inequitable under the circumstances to permit the plaintiff, who had good reason to know before the contract was signed that there must have been a substantial omission or error in the amount of the bid, to take advantage of such error while the contract was still executory and he had been in no way prejudiced, and to require the defendants to do the work for an amount much less than the actual cost." Id., 391–92.

The germ planted in *Geremia* took root in *Regional School District No. 4* v. *United Pacific Ins. Co.*, supra. The plaintiff sought bids on the construction of additions and alterations to a high school. Ray Adler, Inc. (Adler), was the low bidder at $1,910,000. When the bids were opened, Adler discovered an error in the preparation of its bid resulting in a bid that was $110,000 too low. Adler notified the plaintiff of its error the same day, and offered to do the work at the correct price. The plaintiff refused this offer and gave the contract to the second lowest bidder. It then sued the surety on Adler's bid bond. The trial court awarded damages to the plaintiff because Adler was negligent and therefore could not withdraw his bid. In reversing the trial court, we considered the trial court's use of a standard of care which required that Adler be free

of negligence in order for the defendant to prevail on its special defense of unilateral mistake. We stated: "This issue is the subject of an annotation entitled 'Right to Rescind Bid on Public Contract,' found at 2 A.L.R. 4th 991. As a general proposition, the cases discussed in that annotation suggest that two lines of authority exist as to the criteria under which a bid may be rescinded. Both lines of authority tend to agree on three requirements: (1) the mistake must relate to a material aspect of the contract; (2) the mistake must be so great that enforcement of the bid would be unconscionable; and (3) no substantial prejudice should result to the party who has not made the mistake. Id., § 2 [a].

"The fourth criterion, upon which the two schools of authority disagree, is either: (1) whether the mistake was made in the absence of negligence by the mistaken party; or (2) whether the mistake was made in the absence of *gross* negligence by the mistaken party. See id., §§ 3 [a], 5 [a]. Neither of these approaches has ever been adopted in Connecticut. We decline to follow either path, as each imposes an artificial impediment to the true guiding principle in these cases, which is the achievement of equity under all of the circumstances." (Emphasis in original.) *Regional School District No. 4* v. *United Pacific Ins. Co.,* supra, 178–79.

We concluded by stating: "In each of these cases, the courts focused on a variety of factors in determining the equities of the particular case before them. The extent or culpability of the negligence merely constituted a factor for the court to consider.

"In the present case, Adler's error was material to the contract and was extremely serious. Conversely, rescission would not prejudice the plaintiff in any meaningful fashion: The lowest accurate bid was still open to the plaintiff and no action had yet been taken in reliance upon Adler's inaccurate bid. See annot., 2

A.L.R. 4th 991, § 3 [a], citing *Conduit & Foundation Corporation* v. *Atlantic City,* 2 N.J. Super. 433, 64 A.2d 382 (1948).

"Further, Adler promptly notified the plaintiff of the error before the parties entered into a contract and promptly offered to do the job if an amendment to its bid were allowed. See annot., 2 A.L.R. 4th §§ 2 [a], 3 [a], 5 [a]. Adler, upon discovering its mistake, could have done no more to remedy the error than it did. If we were to rule upon this case in any other way, we would be standing by with folded hands . . . .

"Under the circumstances of this case, even assuming that Adler was negligent, since it thereafter promptly notified the plaintiff of the error and offered to accept the contract at what was still the lowest price bid, we will not allow the plaintiff to take advantage of the error before it has suffered any detriment caused by that error." (Footnote omitted.) *Regional School District No. 4* v. *United Pacific Ins. Co.,* supra, 182–83. The court then remanded the case with direction to render judgment for the defendant.

The trial court in this case erred in not applying the correct standards in its consideration of the case. The defendants urge that, as in the *Regional School District No. 4* case, we remand this case with direction to set aside the judgment and render judgment for the defendants. This we decline to do for four reasons, the first of which subsumes the other three. First, as previously stated, the court applied incorrect standards in deciding the case. Second, the result is skewed by that fundamental error in the court's reasoning. Thus, although the court's final conclusion on the first count is apparently based on equitable principles, its obvious heavy reliance on Acmat's negligence and the Pennsylvania rule renders its conclusion unsupportable. Third, the court made contrary findings, stating in its

ruling on the second count that there was no evidence of fraud on Acmat's part while stating in its conclusion on the first count that "it appears from the evidence that [Acmat] attempted to take unfair advantage by learning of the other bids and trying to get an agreement on a higher figure than their bid." Finally, the defendants claim flatly that since thirty days had not elapsed since the bid opening, the Gunnoud bid was still available to the plaintiff without its agreeing to $12,000 in extras. This is vigorously denied by the plaintiff. It claims that it was necessary for it under the circumstances to execute a change order with Gunnoud for increased material costs of $3887 and to pay heating costs of $8105. The plaintiff denies that the Gunnoud contract could have been signed by the October 16, 1979 expiration date of the Gunnoud bid. It states that Acmat's final notification that it was withdrawing its bid did not occur until seven days before the thirty day limitation of the Gunnoud bid. It then claims that it was impossible to go through the necessary procedure and sign a new contract by the October 16, 1979 deadline. The resolution of this conflict can only be decided on a retrial applying the proper standards.

There is error, the judgment for the plaintiff on the first count is set aside and the case is remanded for a new trial in accordance with this opinion.

In this opinion the other judges concurred.