[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Town of North Branford [hereafter "town"] brought this action in two counts against Frank Fanelli d/b/a Fanelli Construction [hereafter "Fanelli"] and his bonding company, Transamerica Premier Insurance Company [hereafter "Transamerica"], based on a bid Fanelli submitted to the town in 1992. Both defendants filed special defenses claiming the bid was unenforceable due to unilateral mistake. Fanelli also counterclaimed seeking recission of his bid on the same ground.
This case was tried to the court on January 28, 1997 and April 15, 1997. Thereafter, the town submitted a brief on May 30, 1997 and the defendants submitted a brief on June 12, 1997. CT Page 8956
I. Facts
The court finds the following facts:
The Town of Branford is a municipality organized under the laws of the State of Connecticut. On October 9, 1992, the town invited bids for an addition to and renovation of the North Branford Police Department. The invitation to bid required a bid bond in the amount of 10% of the total amount bid. Bidding was to close at 11:00 a.m. on November 5, 1992.
The bid specifications were contained in a book dated September 18, 1992, (exhibit A), prepared by the architect for the project, William Silver [hereafter "Silver"], along with the plan drawings (exhibit B). Both the specifications and the plans were available to potential bidders.
The town had appropriated $250,000 for this project. The architect's contract with the town provided that he "shall design the project to fall within a mutually agreeable construction budget and program. Should all of the base contruction [sic] bid proposals exceed the budget, the architect shall redesign the project and coordinate the rebid process at no additional cost to the Town, including printing costs." (Exhibit 2, 2A, article 12.2).
Fanelli, doing business as Fanelli Construction Company, was a small general contractor who was in business with his son Perry Fanelli for about ten years. Before the North Branford project, Fanelli had bid on public and municipal contracts and had been awarded jobs ranging from $150,000 to $250,000 in value. He testified he had done a lot of $250,000 jobs. At the time he bid on the town's project, Fanelli was working on a job remodeling dormitories at Western Connecticut State University in Danbury. Fanelli was familiar with the process of reviewing bid documents.
Fanelli learned about the town's project about ten days before November 5, 1992 and picked up copies of the specifications and plans at that time. He testified that he fully understood the bid documents at the time he prepared the bid, although he neither read the specification book nor reviewed the blueprints in their entirety, only to the extent needed. However, he also testified that the specifications were confusing to him although he thought he understood them at the time. Before CT Page 8957 submitting his bid, Fanelli did not call the architect or anyone else at the town with questions. He prepared the bid he submitted by himself; Perry did not have anything to do with the bid submission. Most of his calculations were on scrap paper that he threw away. He introduced into evidence a single undated sheet (exhibit 13) as his bid calculations. Fanelli testified that he was aware, at the time he submitted the bid, that $250,000 was the architect's estimate of the base bid and, therefore, he tried to keep costs down to come close to that figure.
Fanelli submitted a bid to the town at 10:35 a.m. on November 5, 1992. (Exhibit C) Fanelli also submitted a bid bond from Transamerica dated November 4, 1992 in the amount of 10% of the bid, not to exceed $25,000. (Exhibit D) When the bids were opened on November 5, 1992, Fanelli was the low bidder with a base bid price for the entire project of $248,500.00. No other bid was below $250,000.00. Silver was present when the bids were opened. Although there was disparity among Fanelli's bid, the average of all bids and the architect's estimate of base bid, that alone did not cause Silver to believe Fanelli had made a mistake.
Silver, who also knew Fanelli from a project dating back to the late 70's and early 80's, contacted Fanelli in order to meet with him to discuss the values that went into the bid proposal, the duration of the contract work and the contractor's qualifications. Silver and Fanelli met in the office in Fanelli's home in West Haven for approximately thirty minutes on November 9, 1992. The court credits Silver's version of this meeting.[1]
Fanelli did not indicate either that he wanted to withdraw the bid or that he had made any mistakes in the bid. Nothing, either in the bid itself or in what Fanelli said to Silver, led Silver to believe that Fanelli had many any mistakes in the bid. If Fanelli had said he made mistakes, Silver would have demanded that he produce the technical basis for the claimed error, e.g., whether it was mathematical or based on improper submissions of subcontractor documents. If Fanelli had said he made mistakes, Silver would have informed the town purchasing agent, Frank Connolly, or the police commission/building committee [hereafter "committee"][2] before they met on November 10, 1992.
Silver also contacted Fanelli's references on November 9, 1992 and prepared a memorandum regarding the reference checks. (Exhibit I) The references were positive and one indicated that Fanelli "bid remarkably low on . . . projects in the past." CT Page 8958
Silver met with the committee on Tuesday, November 10, 1992 and advised them that he saw no reason why Fanelli should not be awarded the contract. The committee asked Silver to assist the town purchasing agent with awarding the contract to Fanelli. Frank Connolly [hereafter "Connolly"] was the town manager of North Branford and acted as its purchasing agent. (Exhibit 9) By certified letter entitled "Notice of Award" dated November 20, 1992 (exhibit E), Connolly notified Fanelli that his bid had been accepted at the contract sum of $235,700 incorporating the deletion of alternates 2, 4 and 9. (The bid contained 13 required alternates and one voluntary alternate; alternates 1-8, 10 and 11 were deductions from base bid while alternates 9 and 12-14 could be either deductions or additions. Fanelli bid alternate 9 as a deduction from the base bid.) Fanelli received and signed for this letter on November 23, 1992. The letter contained the following sentence:
 If you fail to execute said Agreement . . . within ten (10) days from the date of receipt of this "Notice of Award", said Owner will be entitled to consider all your rights arising out of the Owner's acceptance of your BID as abandoned and as a forfeiture of your BID BOND.
Connolly was the sole authorized town agent to accept withdrawals of bids and would not have accepted a verbal withdrawal from Fanelli.
Silver and the committee met with Fanelli on the afternoon of November 23, 1992. The court credits Silver's version of this meeting.[3] Silver testified that Fanelli did not say he was withdrawing his bid and that if Fanelli had indicated he had made mistakes in the bid, Silver would have documented the technical basis for the mistakes. Silver's notes of the meeting, which are sketchy, indicate "possible help — open for review change" for: "septic tank/drywell changes, rafter change to truss, AHU elimination and consolidation, antennae." (Exhibit 11) Fanelli was given an extension to December 3, 1992 from the original commitment date of November 30, 1992.
After November 23, 1992, Silver had no contact with Fanelli. Fanelli would not return Silver's telephone calls. (Exhibit J). By certified letter dated December 5, 1992, Silver advised Fanelli that his extension of time had expired and that his commitment to proceed was now due by noon on December 8, 1992 with no further extensions of time (exhibit F). CT Page 8959
Fanelli testified that he received the December 5th letter sometime in early December and sometime later he spoke with Dan Troiano who told him the committee did not know what they were going to do, but that they could "pull the bond or forget about it." The minutes of the regular meeting of the Police Commission on December 14, 1992 (exhibit K) indicate that the Silver reported on the committee's behalf that Fanelli had not met the deadline for submitting figures, had not returned phone calls, and was being uncooperative. The committee was planning to schedule a meeting with the second lowest bidder, DeBaise Construction Company. That meeting took place on December 21, 1992 (exhibit 6). Also on December 21, 1992, Connolly sent a certified letter to Transamerica making demand for payment against Fanelli's bond in the amount of $24,850 (exhibit G). As of the date of trial, no payment had been made to the town by Transamerica on the bid bond.
On January 27, 1993, Connolly sent a certified letter entitled "Notice of Award" to DeBaise Construction, notifying it that the town had accepted its bid for the addition and renovation of the police department building. Ultimately, however, the town did not enter into a contract with DeBaise. Subsequently, the town put the project out to rebid.
Further facts will be found as necessary to the court's decision.
II. Discussion
Equitable principles govern both the enforcement of a bid bond and the recission of a bid when there is a claim of unilateral mistake. Regional School District No. 4 v. UnitedPacific Insurance Co., 4 Conn. App. 175, 178-179,493 A.2d 895(1985), see Naugatuck Valley Development Corp. v. Acmat Corp.,10 Conn. App. 414, 523 A.2d 924 (1987). Equity will grant relief to the bidder if the other party, having become aware of the mistake, "seeks to take an unconscionable advantage of it." Geremia v. Bovarsky,107 Conn. 387, 390, 140 A. 749 (1928). On the other hand, "the system of public bidding . . . should not be broken down lightly by permitting bidders to withdraw because of change of mind. Such a course would be unfair to other straightforward bidders, as well as disruptive of public business." Connecticut v. F.H. McGraw Co.,41 F. Sup. 369, 374 (D.Conn. 1941). Thus, the "true guiding principle" in these cases is the achievement of equity under the CT Page 8960 circumstances. Regional School District No. 4, supra,4 Conn. App. at 179.
To prevent the enforcement of a bid bond provision or to obtain recission of a bid on the ground of unilateral mistake, the bidder must satisfy the following criteria: (1) the mistake must relate to a material aspect of the contract; (2) the mistake must be so great that enforcement of the bid would be unconscionable; (3) no substantial prejudice would result to the party who has not made the mistake and (4) it would be inequitable to permit that other party to gain an unfair advantage.
Fanelli claims here that he made numerous mistakes in the preparation of the bid, including, among other things, mistakes regarding the cost of concrete work, electrical work, septic, plumbing, and pavement. The court will assume, without deciding, that these unilateral mistakes related to material aspects of the contract and that the first criterion has been satisfied.
The remaining criteria require the court to closely examine the circumstances surrounding Fanelli's bid and its acceptance by the town, including whether the town was aware, or should have been aware, of Fanelli's mistakes at the time of acceptance. As the court aptly remarked in Connecticut v. F.H. McGraw Co., supra,41 F. Supp. at 370: "The paramount importance of the facts to a correct appraisal of this controversy is apparent."
The linchpin of those decisions in favor of the bidder appears to be that the other party actually knew, Regional SchoolDistrict No. 4, supra, 4 Conn. App. at 177, or had good reason to believe, Geremia v. Boyarsky, supra, 107 Conn. at 390, that a mistake had been made before insisting on the performance of the contract. For example, in Regional School District No. 4, supra,4 Conn. App. at 177, on the same day that the bid was submitted the bidder discovered its error and sent a mailgram to the plaintiff advising it of the error, following up with a confirmation of the error three days later. In the F.H. McGraw
case, supra, 41 F. Supp. at 370, on the day the bids were opened the state's engineers noticed an "unusual discrepancy" between the McGraw bid, the other bids and their own estimate of the project's cost which prompted the engineers to seek out McGraw's local representative to explain the discrepancy. In Geremia v.Boyarsky, supra, 107 Conn. at 389, the Supreme Court was of the opinion that the plaintiff "had good reason to believe and know CT Page 8961 that there must have been a substantial omission or error in the amount of the bid" which had been prepared in haste at the plaintiff's urging. Moreover, Boyarsky discovered his mistake on the same day that he bid, and the contract was signed, and immediately notified the plaintiff. In Moffett Co. v. Rochester,
82 F. 255 (C.C.N.D.N.Y. 1897), aff'd sub nom. Moffett, Hodgkins, Clarke Co. v. Rochester, 178 U.S. 373 (1899),[4] as soon as the bid was read at the meeting of the city's executive board and before any action was taken on the bid, the plaintiff's engineer told the board that the bid contained errors. The Circuit Court characterized this action as "prompt repudiation" while the Supreme Court stated that: "There was no doubt of the mistake, and there was a prompt declaration of it as soon as it was discovered and before the city had done anything to alter its condition." Id. at 385. Finally, in Conduit Foundation Corp. v. Atlantic City, 2 N.J. Super. 433,64 A.2d 382 (1949),[5] the error in the bid was discovered the day after the bids were opened and the city was immediately notified. As the court there stated, "[i]t becomes important to determine whether the plaintiff promptly rescinded its [bid] given to the defendant . . . . From the facts . . . it appears that before the defendant had accepted the offer of the plaintiff, the plaintiff apprised it of the error and withdrew its offer . . . . Both notice of the error and advice of the recission were promptly given to the defendant prior to the awarding of the contract to the plaintiff." Id. at 386.
In most of the cases discussed above, the bid was in fact explicitly withdrawn before acceptance. Thus, it was no great leap for the courts to apply "[t]he rule between individuals . . . that until a proposal be accepted it may be withdrawn, "Moffett,Hodgkins, Clarke Co. v. Rochester, supra, 178 U.S. at 385, to the context of public contracts. It is now a fairly unremarkable proposition in the area of municipal contracts that "if there is a mistake in the bid and the bidder calls attention to it promptly, he will not be bound by the bid . . . ." (Emphasis supplied.) 10 McQuillin, Municipal Corporations, § 29.82, p. 534 (3d ed. 1990).
In this case, Fanelli's notification to the town was anything but prompt. By his own admission, Fanelli was unaware of any mistakes in the bid until some ten days after it was opened.[6]
Moreover, when Silver met with Fanelli on November 9, 1992, in order to discuss, among other things, the values that went into the bid, Fanelli did not indicate that he wanted to withdraw the bid, that he had made any mistakes in the bid, or that he hadn't fully understood the specifications and drawings. The court may CT Page 8962 infer from the facts presented that Fanelli, who had prior experience in bidding public contracts, had to know, at the least, that he was in contention to be awarded the project when Silver met with him on November 9, 1992.
Additionally, Fanelli never brought to the town's attention at any time many of the mistakes he testified about in court. For example, he testified that he made mistakes, and in some instances the subcontractors he relied upon made mistakes, regarding metal lockers, concrete, excavation, electrical and plumbing, and in omitting the cost of a performance bond from his bid. None of these matters were brought to the town's attention, although when Fanelli met with the committee on November 23, 1992 there were apparently discussions regarding the septic tank and drywell changes, rafter change to truss (regarding the roof), AHU elimination consolidation, and antennae; and Silver's note from that meeting (exhibit 11) indicates those areas were "open for review and change." Nonetheless, despite an extension of time to accept the contract which the town granted, Fanelli took no further steps to identify his mistakes or formally withdraw his bid.[7]
Under the circumstances present here, there was no prompt and immediate repudiation of the bid. Furthermore, nothing was presented to the town which would reasonably lead it to believe that mistakes had been made. While Fanelli's bid was low and there was a discrepancy between it and the other bids, Fanelli was known to have "bid remarkably low on . . . projects in the past." Thus, the town had no good reason to believe that there was a mistake in the bid before accepting it formally on November 20, 1992 and the town did not take any unconscionable advantage of Fanelli.
The court may also consider whether Fanelli's negligence contributed to the situation. As a result of the Appellate Court's decision in Regional School District No. 4, supra, 4 Conn. App. at 178, the court is not required to apply a firm rule that a contractor's negligence or even gross negligence in preparing the bid prevents recission or requires enforcement of the bid bond provisions.Naugatuck Valley Development Corp., supra, 10 Conn. App. at 418. Rather, the court must focus on "a variety of factors in determining the equities of the particular case . . . . The extent or culpability of the negligence merely constitute[s] a factor for the court to consider." Regional School District No.4, supra, at 182. CT Page 8963
There is no question in this case that Fanelli was negligent in the preparation and submission of the bid. He failed to review the specifications and blueprints in their entirety; he admitted omitting certain items which he claimed were not on the specifications but on the drawings; he claimed he must have "grabbed" the wrong specification or quote in bidding on certain of the deduct alternates; he forgot to include the cost of a performance bond; he did not ask any questions before submitting the bid although he found some of the specifications confusing; and he failed to keep the scrap copies of his calculations. Moreover, Fanelli's negligence was compounded when he met with Silver on November 9, 1992 to go over the bid values yet failed to say anything which would lead Silver to believe that there were mistakes in the bid so that the contract should not be awarded to Fanelli. Furthermore, to the extent that Fanelli required assistance to perform the contract at the bid price, Silver's notes of the committee's meeting with Fanelli on November 23, 1992 suggest that the town was open to reviewing and changing certain requirements. Nonetheless, Fanelli failed to follow-up on this meeting, failed to submit figures, did not return telephone calls and was generally uncooperative. Fanelli's overall conduct must be weighed against him in assessing the equities of the situation here.
Under these circumstances, where Fanelli's conduct was the substantial cause of the mistakes made, where he refused to cooperate with the town when it was apparently willing to review and change aspects of the bid and where many of the claimed mistakes were not brought to the town's attention, the court cannot conclude that the mistakes known to the town at the time of acceptance were so great that enforcement of the bid would be unconscionable. On the other hand, to allow Fanelli to prevail under these circumstances, where it is clear that his conduct was in part motivated by his knowledge that his bid was substantially lower than that of the next highest bidder,[8] would impair the public bidding system.
Finally, the court must determine whether the town has been substantially prejudiced. It is uncontroverted that the town had appropriated $250,000 for the project and that the town's contract with the architect required the architect to "redesign and coordinate the rebid process at no additional cost to the town" only if all the base bids submitted exceeded this appropriation. Since Fanelli's base bid was $248,500, the town was unable to enforce this provision of the architect's contract. CT Page 8964 In addition, in order to contract with the next highest bidder, the town council had to authorize a higher appropriation. (Exhibit 1) Ultimately, the town did not enter into a contract with the next highest bidder and the project was put out for rebid. Thus, although no direct evidence concerning the rebid process, including its costs or timing, was presented to the court, the court can infer that the town incurred additional costs associated with the rebidding process and that the timely completion of the project was affected. These facts adequately support a conclusion that the town was prejudiced in this case.
III. Conclusion
Based on the foregoing discussion, the court concludes that the plaintiff has established, by a fair preponderance of the evidence, the elements necessary to forfeit the bid bond and that the defendant has failed to establish that the bid was unenforceable due to unilateral mistake. Accordingly, judgment will enter on the complaint in favor of the plaintiff town and against the defendants Fanelli and Transamerica and on the counterclaim in favor of the town and against the defendant Fanelli.
The parties have stipulated that if the court reached the issue of damages, damages should be limited to the amount of the bid bond. They could not agree, however, on whether the court should award 10% of the $248,500 bid, as the plaintiff claimed, or 10% of the $235,700 contract award, as the defendant claimed. The bid bond which the court is forfeiting provides for the payment of "ten percent (10%) of bid not to exceed $25,000.00." Accordingly, by the terms of the bid bond, damages are awarded in the amount of $24,850.00.
LINDA K. LAGER, JUDGE