**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4481
_____

UNITED STATES OF AMERICA

v.

PHILIP ZOEBISCH,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:09-cv-05207)
District Judge:  Honorable Renée M. Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2014

Before:  FISHER, VANASKIE and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 30, 2014)
_____

OPINION
_____

PER CURIAM

        Philip Zoebisch appeals pro se from an order of the United States District Court

for the District of New Jersey enforcing a settlement agreement reached in this student

1

loan collection action. For the reasons that follow, we will affirm the District Court's judgment.

I.

In 2009, the Government filed a complaint against Zoebisch in the District Court, alleging that he had failed to repay nearly $39,000 in student loan principal and interest. After more than a year of litigation, Zoebisch, who has proceeded pro se throughout this litigation, sought permission to file various counterclaims. The Magistrate Judge denied that request as untimely. Zoebisch appealed that ruling to the District Court. The court affirmed, but also "broadly construe[d] [his] Answer as setting forth a counterclaim for all money that was allegedly wrongfully taken from him by the government." (Dist. Ct. Order entered Oct. 14, 2011, at 2.) The court thus allowed that one counterclaim to proceed. In that same order, the court denied the Government's motion for summary judgment.

In February 2012, the District Court held a settlement conference, during which the parties reached an oral settlement agreement. The terms of the agreement, which were placed on the record, were as follows: (1) the complaint would be dismissed with prejudice, thereby releasing Zoebisch from any liability on the student loans in question; (2) the Government would pay him $2639.91 in connection with his counterclaim; and (3) the settlement would not prevent him from pursuing any other claims against the Government. After placing those terms on the record, the District Court directed the

Government to prepare the written settlement agreement, and informed Zoebisch that "you have a right, of course, to have, if you want, to have a lawyer review that paperwork." (Tr. of Settlement Conference at 14.) During the colloquy that followed, Zoebisch confirmed that he agreed to the terms of the settlement, and that he was entering into the settlement voluntarily.

After the conference, the court issued an order dismissing the case "without prejudice to the right, upon motion and good cause shown, within 60 days, to reopen this action if the settlement is not consummated." (Dist. Ct. Order entered Feb. 24, 2012.) The order further provided that "[i]f any party shall move to set aside this Order of Dismissal as provided [above] . . . , in deciding such motion the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties." (Id.)

Fifty-six days after the dismissal order issued, Zoebisch submitted a letter to the District Court, stating that he "must refuse the Settlement Agreement." (Letter filed Apr. 20, 2012, at 1.) In support of this position, he claimed that he had consulted with two attorneys regarding the written settlement agreement that the Government had sent him. He alleged that one lawyer told him that the written agreement accurately reflected the oral settlement (with "one minor clarification"), but that the other lawyer told him that there was "virtually no chance that [Zoebisch] could sue" the Government for his surviving claims. (Id.) Four days later (and 60 days after the District Court's order of

3

dismissal), the Government submitted a letter of its own, notifying the court that it would be filing a motion to enforce the settlement, and requesting that the court abstain from dismissing the case pending that motion.

In February 2013, the Government filed its motion to enforce the settlement. Zoebisch opposed the motion, and a hearing was held in September 2013. At the hearing, the District Court found that the terms of the settlement agreement had been set forth during the settlement conference, and that the parties had agreed to be bound by them. The court further found that the written agreement prepared by the Government reflected those terms (though the court did make some minor clarifications at Zoebisch's request). At the end of the hearing, the court asked the parties to brief whether the Government's delay in filing its motion to enforce affected the court's jurisdiction over that motion.

After receiving that briefing, the District Court issued an order addressing the pending motions. The court, construing the parties' respective letters as motions to reopen the case, denied Zoebisch's motion to reopen and granted the Government's motion to reopen. The court then concluded that it had jurisdiction over the Government's motion to enforce the settlement, granted that motion, and held that Zoebisch was required to comply with the terms of the settlement. Lastly, the court directed the Clerk to close the case. This timely appeal followed.[1]

II.

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

4

A district court has the authority to enforce a settlement agreement in a case that has been dismissed if its order of dismissal specifically reserved jurisdiction to do so. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994); Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 248 n.7 (3d Cir. 2013). Here, the District Court's dismissal order specifically reserved jurisdiction to enforce the settlement in the event a party moved to reopen within the 60-day window. That provision was triggered when the parties timely moved to reopen.[2] Accordingly, the District Court had jurisdiction to enforce the settlement.

We now turn to the merits of the District Court's decision to enforce the settlement. We review the court's factual findings undergirding its decision for clear error, see Tiernan v. Devoe, 923 F.2d 1024, 1031 n.5 (3d Cir. 1991), and we exercise de novo review over any questions of law, see Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004). Zoebisch presents four arguments in support of his claim that the settlement should have been rescinded, not enforced. We consider them in turn.

Zoebisch first argues that the District Judge had a conflict of interest because she helped negotiate the settlement despite the fact that she had yet to rule on his motion for a jury trial. Zoebisch did not raise this issue at the settlement conference, instead waiting

---

[2] We find no error in the District Court's decision to construe the Government's letter as a motion to reopen. Because that motion was timely, the fact that the Government waited some time before formally moving to enforce the settlement did not affect the court's jurisdiction over the settlement.

until a few days before the post-dismissal hearing. At the hearing, the District Judge indicated that, although she may not have ruled on the motion for a jury trial, "it was clearly my intent to have a jury try this case." (Tr. of Hr'g at 32.) The District Judge emphasized that "I would not sit as a fact finder and attempt to settle a case. That I think is inappropriate, it is not a course of conduct to be followed, and I do not follow that course of conduct." (Id.) Zoebisch, meanwhile, admitted at the hearing that the District Judge had been "very fair in everything." (Id. at 3-4.) Under these circumstances, we cannot conclude that the District Judge's role in facilitating a settlement constituted a conflict of interest or otherwise warranted rescinding the settlement.

Zoebisch next contends that the settlement agreement was the product of a unilateral mistake of fact because he did not realize that his surviving claims against the Government had "zero value." (Appellant's Br. 2.) This argument is unpersuasive. First, it is unclear whether his surviving claims truly have no value. Indeed, his alleged mistaken belief about the value of these claims stems from one attorney's *opinion*, not some factual premise. Second, even if Zoebisch's alleged mistake actually constitutes a mistake of fact, he has not shown that the mistake is so great that enforcement of the settlement would be unconscionable. See Villanueva v. Amica Mut. Ins. Co., 864 A.2d 428, 432 (N.J. Super. Ct. App. Div. 2005).[3] Regardless of the value of these surviving

---

[3] We cite to New Jersey contract law as it governs this issue. See Tiernan, 923 F.2d at 1032-33 & n.6.

claims, Zoebisch reaped substantial benefits from the settlement. Specifically, he was not required to remit any payment to the Government on the student loans in question, the complaint was dismissed with prejudice, and the Government was required to pay him more than $2600 in connection with his counterclaim.

Zoebisch's third argument asserts that there is "an inherent right" to counsel, (Appellant's Br. 7), and that the settlement should be rescinded because he "was not allowed to act on the advice of [c]ounsel," (id. at 4). The first part of this argument clearly fails, for a litigant in a civil case does not have a statutory or constitutional right to counsel. See Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). The second part of the argument concerns his consultation with attorneys after the settlement conference. The District Court afforded him that opportunity to consult to ensure that the written settlement agreement prepared by the Government accurately reflected the terms of the settlement. Although the consulting attorneys may have expressed opinions to Zoebisch regarding the advisability of the settlement terms, Zoebisch had already agreed to be bound by those terms and, thus, could not rescind the settlement based on those opinions.

Finally, Zoebisch appears to argue that the Government is "abus[ing]" the laches defense to the extent that this defense is inapplicable to student loan collection cases. We agree with the Government that this argument has nothing to do with the settlement agreement and, thus, has no bearing on the outcome of this appeal.

In sum, none of Zoebisch's arguments warrants disturbing the District Court's decision to enforce the settlement agreement, and we see no other reason to vacate that decision. Accordingly, we will affirm the District Court's judgment.